**Lisa CARUSO, Plaintiff–Appellant–Cross–Appellee,**

v.

**William FORSLUND and Nicholas Palladino, Defendants–Appellees–Cross–Appellants.**

**Nos. 355, 486, Dockets 94–7220, 94–7266.**

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1994.

Decided Jan. 31, 1995.

John R. Williams, New Haven, CT, for plaintiff-appellant-cross-appellee.

Suzanne L. McAlpine, New Haven, CT (Hugh F. Keefe, Lynch, Traub, Keefe & Errante, of counsel), for defendants-appellees-cross-appellants.

Before: LUMBARD, KEARSE, and MINER, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellant-cross-appellee Lisa Caruso and defendants-appellees-cross-appellants William Forslund and Nicholas Palladi-

no appeal from a judgment entered on January 26, 1994 in the United States District Court for the District of Connecticut (Eginton, J.). Caruso brought this action under 42 U.S.C. § 1983, alleging numerous civil rights deprivations stemming from the defendants' entry into her home to search for a missing child. A jury found that the defendant law enforcement officers had conducted an unreasonable search, but awarded Caruso no damages. After trial, Caruso moved for an award of nominal damages and a new trial to assess punitive damages. The defendants moved for judgment as a matter of law on the issue of liability, or in the alternative, for a new trial. The district court granted Caruso's motion for nominal damages, denied the motion for a new trial to assess punitive damages, and refused to award attorney's fees. The district court denied defendants' motions in all respects. 842 F.Supp. 1497. We affirm the entire judgment, although we affirm for reasons different from those provided by the district court with respect to the denial of a new trial on punitive damages.

## BACKGROUND

On the morning of September 14, 1988, Detective William Forslund of the East Haven, Connecticut Police Department was approached at police headquarters by Donna Neuman, a woman searching for her two-year-old daughter Nicole. Ms. Neuman told Detective Forslund that her child had been abducted from Maine, and that she had reason to believe that the child was in East Haven. Ms. Neuman had no court order establishing the custody of Nicole, nor did she file with Forslund a criminal complaint pertaining to the abduction. She did, however, present Forslund with the child's birth certificate, which identified Nicole's mother as Donna Lynne Neuman and the father as Kenneth Roy Merrick.

Ms. Neuman told Forslund that the father of the child was Mr. Ira Perkins, and she gave Forslund a list of names and addresses of Mr. Perkins' family members. One of the names on the list was Sylvia Caruso, whose address was listed as 20 Foote Road, New Haven, Connecticut. (It was later determined that this address actually was in East Haven.) Forslund then obtained teletype information from Maine, and learned that there was an all points bulletin out on Nicole. According to the bulletin, Nicole was missing from her home in Maine and it was believed that she had been taken by Ira Perkins. After receiving this information, Forslund contacted an official in Maine and received confirmation that the bulletin was still active. Forslund then contacted defendant Officer Nicholas Palladino, who was on patrol at that time, and told him to proceed to 20 Foote Road in East Haven. Detective Forslund also proceeded to that address, along with Ms. Neuman and a police matron. The officers had not obtained a warrant to search the premises.

There is some dispute as to what occurred when Forslund and Palladino entered the house, but there was testimony that they entered Caruso's home without her consent. After the officers entered the house, they saw a number of children, as well as two adult visitors, standing in the living room with Caruso. Forslund then told Caruso that he was looking for Nicole Neuman, and he asked if one of the children in the room was Nicole. No one in the house would tell the officer whether one of the children was Nicole, or whether she was in the house at all. The inquiries about Nicole caused Caruso to become very upset, and there was testimony that she repeatedly asked the officers to leave. In addition, there was testimony that at least one of the officers left the living room area and looked into other rooms in the house.

During the time that the officers were in her home, the plaintiff telephoned her father, Nicholas Caruso, who came to the house soon afterward. When Mr. Caruso arrived, Forslund notified him that he had received a complaint from Ms. Neuman and that he was looking for Ira Perkins in connection with the matter. Mr. Caruso then identified Nicole and contacted Mr. Perkins by telephone. The plaintiff had also contacted her sister, Doris Caruso, who came to the house. Again, although there is some dispute as to what happened next, there was evidence that Detective Forslund, Mr. Caruso and Doris Caruso went to the East Haven Police De-

partment where they met Ira Perkins. There, Perkins was informed by the State Attorney's office that he could retain custody of Nicole until Ms. Neuman produced proper custody papers. Ms. Neuman returned to Maine that day without Nicole.

Ms. Caruso brought this action in the United States District Court for the District of Connecticut, alleging that the defendants had deprived her of numerous rights guaranteed by both federal and state law, including the right to be free from unreasonable searches. The case proceeded to trial, and, at the end of plaintiff's case-in-chief, the defendants moved for judgment as a matter of law. The court reserved decision on the motion. After all the evidence had been presented, the defendants renewed their motion for judgment as a matter of law, and the court granted the motion as to all claims except for the claim based on an unreasonable search. Both parties presented the court with proposed jury instructions on the issue of punitive damages, but the court stated at a charging conference that it would not charge the jury on punitive damages until the jury first resolved the issue of liability. Caruso did not object to the court's decision, nor did she raise an objection after the charge, which omitted any reference to punitive damages.

After the instructions were given, interrogatories were submitted to the jury pursuant to Fed.R.Civ.P. 49(b). Three questions were presented: (1) whether the defendants had conducted an unreasonable search of plaintiff's home; (2) whether such a search was the proximate cause of plaintiff's injury; and (3) if the answers to the previous questions were in the affirmative, what damages should be awarded to the plaintiff. The jury deliberated and found that the defendants had conducted an unreasonable search, that the search was the proximate cause of plaintiff's injury, but that no damages should be awarded. After the verdict was returned, the court asked for briefs on the issue of whether Caruso was entitled to nominal damages. Neither the court nor the attorneys raised the issue of punitive damages at this point. The jury then was dismissed without objection by Caruso.

After trial, Caruso filed a motion for an award of nominal damages and moved for a new trial on the issue of punitive damages. The defendants made another motion for judgment as a matter of law, or in the alternative, for a new trial. The district court granted the plaintiff's motion for nominal damages and awarded her $1.00, but denied her motion for a new trial on the issue of punitive damages, stating that "[a]bsent evidence that a defendant was motivated by an evil intent or a reckless or callous indifference to a plaintiff's constitutional rights, a jury cannot award punitive damages." The court concluded that Caruso had offered no evidence that would justify a finding that the officers were motivated by an evil intent or by a reckless or callous indifference to plaintiff's rights, and therefore that plaintiff was not entitled to punitive damages. In addition, although the plaintiff had not formally moved for attorney's fees, the court found that the plaintiff was not entitled to a fee award because she had received only nominal damages. The court denied both motions made by the defendants, concluding that there was adequate evidence to support the finding of an unreasonable search and seizure. Both sides appeal from the judgment.

## DISCUSSION

### 1. *New Trial on Punitive Damages*

Caruso contends that the district court erred in denying her motion for a new trial on the issue of punitive damages. She argues that, in an action under section 1983, the standard of care that justifies a finding of liability in the first instance is the same as the standard for a finding of punitive damages, and that because the court permitted the issue of liability to go to the jury, she deserved a trial on the issue of punitive damages as well. Because we conclude that plaintiff has waived her right to a determination of whether she is entitled to punitive damages, we need not reach this argument. For the same reason, we do not pass on the district court's finding that the evidence did not justify an award of punitive damages.

Federal Rule of Civil Procedure 51 provides that "[n]o party may assign as error

the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." This rule is designed to allow a trial court to have an adequate opportunity to cure any defects in the instructions before sending the jury to deliberate. *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir.1992). In this case, before the jury retired, the court specifically asked Caruso's attorney whether there were any exceptions to the charge as given. In response, Caruso's counsel stated that she had none. Accordingly, Caruso may not raise an objection to the charge in this court. Nor may plaintiff rely on her submission of proposed jury instructions that included an instruction on punitive damages. Rule 51 explicitly requires that an objection be made. *See Salazar v. City of Chicago,* 940 F.2d 233, 242 (7th Cir.1991).

■ We recognize that the district court stated at the charging conference that it would reserve a charge on punitive damages until the jury returned its verdict on liability. This statement by the district court may well have lulled the plaintiff into failing to object before the jury was sent to deliberate, although the better practice would have been for counsel to object before the jury retired. In any event, there was no excuse for plaintiff's failure to raise the issue of punitive damages after the verdict on liability was returned, before the jury was dismissed and while there yet remained an opportunity for the court to rule. When, as here, a district court is permitted to dismiss the jury without objection because of a party's lack of diligence, that party may not later complain of a failure to submit an issue to the jury. This is not a case, for example, where the trial court has made clear that an objection would be futile. *Cf. Anderson v. Branen,* 17 F.3d 552, 556–57 (2d Cir.1994). Caruso's attorney simply passed up the opportunity to urge consideration of the punitive damages issue. Under these circumstances, the plaintiff is not entitled to a new trial on this issue.

### 2. *Attorney's Fees*

Caruso also argues that the district court erred in denying an award of attorney's fees.

The district court relied upon *Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), in which the Supreme Court suggested that where a plaintiff was awarded only nominal damages, a fee award would normally be inappropriate. *Id.* at ——, 113 S.Ct. at 575. The district court concluded that, although the plaintiff prevailed, her victory was "technical" because she had been awarded no compensation, and therefore that any fee award would be unreasonable. We review the district court's decision for an abuse of discretion. *LaRouche v. Kezer,* 20 F.3d 68, 71 (2d Cir.1994).

■ Having been awarded nominal damages on the basis of the defendants' violation of her constitutional rights, Caruso is a prevailing party within the meaning of 42 U.S.C. § 1988. *See Hobby,* —— U.S. ——, 113 S.Ct. at 573. But, because the critical factor in determining the reasonableness of a fee award is " 'the degree of success obtained,' " *id.* at ——, 113 S.Ct. at 574 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983)), where a plaintiff recovers only nominal damages, "the only reasonable fee is usually no fee at all." *Id.* at ——, 113 S.Ct. at 575. Applying these principles, we conclude that the district court acted well within its discretion in denying attorney's fees.

■ The complaint in this case alleged a host of rights violations, but only one claim eventually was submitted to the jury. On that claim, moreover, the jury returned a verdict for no compensatory damages, and the plaintiff obtained nominal damages only by moving for them. Plaintiff thus " 'fail[ed] to prove ... [a] claim for monetary relief.' " *Id.* (quoting *Carey v. Piphus,* 435 U.S. 247, 256–57, 98 S.Ct. 1042, 1048–49, 55 L.Ed.2d 252 (1978)). Accordingly, there was a sound basis for the district court's conclusion that the only reasonable fee was "no fee at all." *See also Cartwright v. Stamper,* 7 F.3d 106, 109–10 (7th Cir.1993) (no attorney's fees for victory on claim of unreasonable search and seizure where only nominal damages were recovered, broad allegations of conspiracy were rejected, and no punitive damages were awarded).

Caruso attempts to distinguish her case from *Hobby,* arguing that in *Hobby* the plaintiff received only nominal damages while seeking $17 million, whereas in this case no damages were sought. Because she sought no compensatory damages, Caruso argues, her award of nominal damages was not a "technical" victory. *Cf. Hobby,* — U.S. at —–—, 113 S.Ct. at 574–75 (in fixing fees district court should "give primary consideration to the amount of damages awarded as compared to the amount of damages awarded as compared to the amount sought") (quoting *Riverside v. Rivera,* 477 U.S. 561, 585, 106 S.Ct. 2686, 2700, 91 L.Ed.2d 466 (1986) (Powell, J., concurring)). This argument fails because, contrary to plaintiff's contention before this court, damages were sought in this case.

Plaintiff's complaint states in its first paragraph that the action "is an action for money damages." In addition, the last paragraph of the complaint states that "the plaintiff demands . . . [c]ompensatory damages in an amount this Court shall consider to be fair, just and reasonable . . . [and p]unitive damages." Furthermore, compensatory damages were addressed in plaintiff's proposed jury instructions, as well as in the jury charge and the interrogatories given to the jury. While plaintiff points to testimony that supposedly demonstrates that she desired no damages, that testimony is, at best, ambiguous.[1] No statement appears in the record specifically withdrawing any claims for compensatory money damages. Under the circumstances of this case, we cannot say that the denial of attorney's fees was an abuse of discretion.

### 3. *Defendants' Cross–Appeal*

The defendants cross-appeal from the district court's denial of their post-trial motion for judgment as a matter of law, or in the alternative for a new trial, arguing that no reasonable jury could have found in the plaintiff's favor on the unreasonable search issue. Defendants' arguments must be rejected.

█ Judgment as a matter of law is proper under Fed.R.Civ.P. 50 "only if, 'without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.' " *Stubbs v. Dudley,* 849 F.2d 83, 85 (2d Cir.1988), *cert. denied,* 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989) (quoting *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970)); *see also Piesco v. Koch,* 12 F.3d 332, 340 (2d Cir.1993) (judgment as a matter of law appropriate where "with respect to an issue essential to the plaintiff's case, there is no legally sufficient evidentiary basis for the jury to find in favor of the plaintiff"). The defendants cannot meet this standard. They entered the plaintiff's home without a warrant and with no documents establishing the custody of the child for whom they were searching. Ample evidence indicated that they entered without consent, and that the plaintiff insisted that the defendants leave, but that they refused to do so. There also was adequate evidence to find that at least one of the defendants, without consent, searched in areas of the house outside of the living room. Based on this evidence, a jury was justified in concluding that these actions were unreasonable.

---

1. The testimony is as follows:
   Q [defendants' attorney]: . . . Ms. Caruso, . . . [y]ou're suing these two police officers claiming that what, your civil rights were violated?
   A [plaintiff]: Yes.
   Q: That's what you're claiming. And you want these folks to give you money. That's what you're here for; is that right?
   A: This is the only forum I can bring against them [sic].
   Q: Oh, no that's not true, is it[?] East Haven has a police commission, doesn't it?
   A: And it doesn't work.
   . . .
   Q: . . . .[T]he commission . . . can't give you any money, can they?

   A: It's not about money.
   Q: This isn't about money?
   A: It's about what they did.
   Q: Okay. Do you want any money?
   A: Really I—I'm not worried about getting money.
   Q: Well, does that mean, no, you don't want any money?
   A: I'm not concerned about it now.
   Q: You don't want money. What do you want, an apology?
   A: Yes.
   Joint App. at 130–132.

In the face of this evidence, the defendants point to the fact that they were considering the welfare of a child when they entered the home. But that fact, standing alone, does not enable the jury to conclude that the search was reasonable. Here, upon all the facts revealed, the jury concluded that the officers acted unreasonably. The evidence supporting that conclusion was more than adequate. Finally, in light of that evidence, the district court's denial of the defendants' motion for a new trial clearly was proper. *See Song v. Ives Lab., Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992) (new trial inappropriate unless jury has reached a seriously erroneous result or verdict is miscarriage of justice).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

KEARSE, Circuit Judge, concurring:

I concur in the judgment and in most of the majority opinion. I write separately to note my disagreement with the majority opinion's suggestion that, by failing to object to the district court's failure to submit the question of punitive damages to the jury, the plaintiff waived all right to have that claim decided. This is not a case in which a party has withdrawn or abandoned a claim. As the majority opinion notes, plaintiff may well have been "lulled" into failing to object to the submission of the punitive damages issue to the jury; and after the jury was discharged, plaintiff moved to have that issue decided in a new trial. A court should not assume that an expressly asserted and pursued claim has been withdrawn unless there is clear evidence of a knowing withdrawal. *See, e.g., Frank v. Relin*, 1 F.3d 1317, 1326–27 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993). In my view, for the reasons stated below, plaintiff was entitled to have the punitive damages issue decided by the court, although in the circumstances of this case a remand for such a decision is not necessary.

Although the questions submitted to the jury were denominated interrogatories, I disagree with the majority's view that they were submitted pursuant to Fed.R.Civ.P. 49(b). That Rule governs interrogatories that are submitted along with instructions for the jury to return a general verdict. *See generally Lavoie v. Pacific Press & Shear Co.*, 975 F.2d 48, 52–53 (2d Cir.1992). Here, the jury was asked three questions in all. Two were fact questions, *i.e.*, (1) whether either or both of the defendants conducted an unreasonable search of Caruso's residence, and (2) if so, whether that conduct was a proximate cause of Caruso's injury. These two questions enabled a legal conclusion as to liability, but the jury was not asked for such a conclusion. The third question, how much in compensatory or nominal damages the jury awarded, did not call for a "general" verdict, except perhaps as to the quantification of those damages. I do not view either the third question alone or the interrogatories as a group to call for a general verdict even on the request for compensatory damages, much less on plaintiff's request for punitive damages or on her claim as a whole.

Rather, I regard the questions as having been submitted to the jury in accordance with Rule 49(a). The fact that they were called "Interrogatories," a term used in Rule 49(b) but not 49(a), is not determinative, for Rule 49(a) is not rigid. It provides that "the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or *it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate.*" Fed.R.Civ.P. 49(a) (emphasis added). Since the court used an appropriate method of submitting the issues by specific questions but did not ask for a general verdict, I think Rule 49(a) applies.

When (a) the jury is not asked to return a general verdict but is merely asked to answer interrogatories, (b) a question essential to the adjudication of the claim is not included in the interrogatories, and (c) the parties do not urge the court prior to discharging the jury to submit that question to the jury, the court itself must answer the question. *See, e.g.*, Fed.R.Civ.P. 49(a); *Cullen v. Mar-*

*giotta,* 811 F.2d 698, 731 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). If the court does not make an explicit finding on the question not put to the jury, the court is deemed to have made a finding consistent with the judgment entered on the special verdict form, Fed. R.Civ.P. 49(a), unless this would be inappropriate, *see* Fed.R.Civ.P. 1 (Rules should be construed in manner designed "to secure the just ... determination of every action"); *Cullen v. Margiotta,* 811 F.2d at 731. Since, as the majority discusses, plaintiff here did not timely ask the court to put the question of punitive damages to the jury, I believe the court itself should have decided that question in accordance with Rule 49(a).

Even if the submission to a jury of questions that plainly do not cover all aspects of the plaintiff's claim could be deemed to call for a "general verdict," making part (b) of Rule 49 applicable, I would not interpret Rule 49(b) to require that we find a waiver of an issue the plaintiff clearly did not mean to abandon. Part (b) of the Rule is silent as to the course to be followed where a "general verdict" has been requested with respect to only a specific part of the plaintiff's claim. In order to interpret this silence in a way that would achieve a just result here, I would not conclude that the court's failure to ask the jury about part of the claim that plaintiff clearly did not wish to abandon results in abandonment. I would conclude instead that the gap between the scope of plaintiff's claim and the scope of the jury's responses should be filled in accordance with the procedures prescribed in part (a) of the Rule.

Under Rule 49(a), where the trial judge has been silent on the undecided question or has indicated only that it could not decide the omitted question in favor of the plaintiff as a matter of law, we have remanded for the court to decide the issue. *See Cullen v. Margiotta,* 811 F.2d at 731–32. In the present case, however, the trial court plainly indicated its view at the conclusion of the evidence that plaintiff was not entitled to punitive damages: "I do not, myself, regard this as a punitive damages case...." (Trial Transcript, November 18, 1993, at 9.) Indeed, the court stated that if there were a jury verdict awarding plaintiff punitive damages, the court would probably set that verdict aside. *Id.*

In light of these statements, we should deem the trial court to have decided the punitive damages issue in accordance with Rule 49(a) and to have ruled against plaintiff. Accordingly, no remand is required, and I agree with the majority that the judgment should be affirmed.