Janet E. VIROSTEK, Plaintiff,

v.

**LIBERTY TOWNSHIP POLICE DEPARTMENT/TRUSTEES, et al., Defendants.**

**No. 4:96 CV 2336.**

United States District Court, N.D. Ohio, Eastern Division.

June 7, 1999.

Denise J. Knecht & Associates, Cleveland, OH, Daniel J. Nealon, for Janet E. Virostek.

John David Latchney, Reminger & Reminger, Cleveland, OH, for Liberty Township Police Dept.

John David Latchney, Reminger & Reminger, Cleveland, OH, Barry R. Laine, Dennis Haines, Green, Haines, Sgambati, Murphy & Macala, Youngstown, OH, for Gerald T. Wardrop.

Dennis Haines, Green, Haines, Sgambati, Murphy & Macala, Youngstown, OH, for Daniel Thomas, Shirley Turney.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

On October 28, 1996, Plaintiff, Janet E. Virostek, filed the above-captioned action against the Liberty Township Police Department and Trustees ("Liberty") and its Chief of Police, Gerald T. Wardrop[1] ("Wardrop") alleging that Defendants discriminated and retaliated against her based upon her sex, age, and disability in violation of 29 U.S.C. §§ 621, 794, 42 U.S.C. § 2000(e) et seq. and OHIO REV. CODE § 4112.99. Plaintiff also alleged claims of breach of contract and violations of constitutional rights under 42 U.S.C. § 1983.

On November 19, 1998, this Court granted Defendants' Summary Judgment on *all* of Plaintiff's claims, except her Title VII (sex discrimination and retaliation), Age Discrimination in Employment Act ("ADEA"), and OHIO REV. CODE § 4112.99 (age and sex discrimination and retaliation) claims insofar as they dealt with her involuntary transfer from the juvenile division to the patrol division.

In December, 1998, the Court held a trial in the above-captioned matter. Prior to trial, the parties and the Court agreed that the Court would decide whether or not Plaintiff was entitled to back pay. Transcript of February 9, 1999 hearing at 7, ln. 16–20. At the close of Plaintiff's case-in-chief, the Court granted Defendants' FED.R.CIV.P. 50(a)(1) motion for judgment as a matter of law on Plaintiff's retaliation claims. On December 22, 1998, the jury returned a verdict in favor of Plaintiff with regard to her state and federal claims that her transfer from the juvenile officer position to the patrol division

---

1. On March 2, 1998, this Court dismissed all claims of employment discrimination under federal statutes against Defendant Wardrop in his individual capacity as an individual cannot be sued under Title VII, the ADA, or the ADEA.

was a result of sex discrimination and awarded her one dollar ($1.00) in damages. On the age discrimination claim, the jury returned a verdict in favor of Defendant Liberty. On February 9, 1999, the Court heard arguments from counsel on Plaintiff's Motions for back pay (Dkt. No. 224) and attorney's fees and costs (Dkt. No. 225). For the following reasons, Plaintiff's motions are **DENIED**.

### FACTS

On July 9, 1979, Plaintiff began her full-time employment with Liberty. In January 1990, Plaintiff was appointed "Acting" Sergeant. On June 12, 1990, she was promoted to Sergeant. During most of her tenure, Plaintiff was the only female officer with Liberty.

On September 25, 1992, Plaintiff was placed in the juvenile officer position. On April 20, 1995, Plaintiff was involuntarily transferred from her juvenile officer position to the Patrol Division and replaced by a 26–years–old male officer. After successfully pursuing a union grievance, she returned to the juvenile officer position on July 1, 1996, with Dr. Anderson releasing her to work.

On June 26, 1998, Plaintiff was appointed as a Captain in the Liberty Township Police Department and is still serving in that capacity today.

### ANALYSIS

*I.  Back pay Issues*

The goal of Title VII is to "make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). To help achieve this goal, Title VII and Ohio law provide for the award of back pay where discrimination is proved. *See* 42

U.S.C. § 2000e–5(q); OHIO REV. CODE § 4112.99.

In the instant case, Plaintiff was laterally transferred from the juvenile officer position to the patrol division.[2] Despite the transfer, her rank of sergeant, wages, and benefits remained the same. In most instances, a transfer that does not involve a demotion or a reduction in pay will not give rise to a materially adverse employment action. *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996). However, it is reasonable to determine that a transfer from the detective division to the patrol division would be an adverse employment action due to the shift in job responsibilities and the loss of the distinction that normally accompanies a detective position.

Ordinarily, back pay would not be an appropriate remedy when there is no change in wages or benefits. *See Zerilli v. New York City Transit Authority,* 973 F.Supp. 311, 315 (E.D.N.Y.1997). Plaintiff, however, alleges that the transfer to patrol sergeant and the ancillary physical rigors of that position forced her to take a medical leave of absence to have corrective shoulder surgery. She further alleges that the loss of wages and benefits during this medical leave entitles her to $53,867.28 in back pay.

In order to succeed on her back pay claim, Plaintiff must demonstrate that there was a causal connection between her transfer to the patrol division and her medical leave which was necessitated by her shoulder surgery. *See Jackson v. Dukakis,* 526 F.2d 64 (1st Cir.1975); *Pettway v. American Cast Iron Pipe Company,* 494 F.2d 211 (5th Cir.1974). She heavily relies upon the testimony of Dr. Thomas Anderson, her treating physician, to establish this causal connection. Indeed, Dr. Anderson did testify that the surgery

**2.** Plaintiff already argued before the jury that she was entitled to compensatory damages for the loss of income she experienced in losing her teaching position at Youngstown State University while on medical leave. Neverthe-

less, the jury only awarded one dollar in damages. Therefore, the loss of income from her teaching position will not be discussed herein as it is not an issue before this Court.

"would make her better able to perform her patrol duties." Dr. Anderson Transcript at 24, ln. 3–4. He further testified that Plaintiff's treatment with injections would be more "problematic" if she were assigned to patrol duties. Dr. Anderson Transcript at 23, ln. 18–22.

However, despite Plaintiff's argument that she was physically competent to perform the duties of a detective position, Dr. Anderson also testified that he did not know whether the injections would provide the necessary relief for Plaintiff to perform the *juvenile officer* duties. Dr. Anderson Transcript at 23, ln. 13–17. In fact, he testified that since he was having difficulty "controlling her shoulder pain," they had to consider "operative management." Dr. Anderson Transcript at 22, ln. 11–17. He further testified that her shoulder problems prohibited her from engaging in certain juvenile officer duties which involved physical confrontations or making custodial arrests. Dr. Anderson Transcript at 34, ln. 5–15.[3] Thus, the record indicates that the shoulder surgery was necessary regardless of whether she was transferred to the patrol division or continued in her position as the juvenile officer.

In light of Dr. Anderson's testimony that plaintiff's shoulder problems prohibited her from engaging in *any* physically demanding duties of the patrol or juvenile officer positions, Plaintiff has failed to establish the requisite causal connection between her transfer to the patrol division and her medical leave of absence. Therefore, as Plaintiff has failed to demonstrate that she lost any wages or benefits as a result of her lateral transfer from the juvenile officer position to the patrol division, the Court need not further discuss any other arguments of Defendants. Accordingly, Plaintiff's Motion for Back pay is **DENIED**.

## II.  Attorney's Fees

On December 22, 1998, the jury returned a one dollar verdict in favor of Plaintiff on her claim for sex discrimination. Title VII provides that in "any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee...." 42 U.S.C. § 2000e–5(k). The Sixth Circuit has held that the trial courts must conduct an initial valuation of the hours reasonably expended at a reasonable rate and then examine the award against several factors such as those outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See, United Slate, Tile, & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502–03, 503 n. 3 (6th Cir.1984). In *Johnson*, the Fifth Circuit set forth twelve factors that trial courts may consider in calculating reasonable attorneys' fee awards.[4]  *See Blanchard v. Bergeron*, 489 U.S. 87, 93, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)(*Johnson* court's twelve factors "provides a useful catalog of

---

3. The only juvenile officer duties which Dr. Anderson testified that Plaintiff was capable of performing with her shoulder problems were taking reports, interviewing people, paperwork, speaking at the schools, routine driving, and testifying in court. Dr. Anderson Transcript at 38, ln. 4–20.

4. The *Johnson* factors are summarized as follows:

   (1) the time and labor required;
   (2) the novelty and difficulty of the questions;
   (3) the skill requisite to perform the legal service;
   (4) the preclusion of employment by the attorney due to the acceptance of the case;
   (5) the customary fee;
   (6) whether the fee is fixed or contingent;
   (7) time limitations imposed by the client or the circumstances;
   (8) the amount involved and the results obtained;
   (9) the experience, reputation, and ability of the attorneys;
   (10) the undesirability of the case;
   (11) the nature and length of the professional relationship with the client;  and
   (12) awards in similar cases.
   *Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

the many factors to be considered in assessing the reasonableness of an award of attorney's fees.") The *most critical* factor in determining a fee award's reasonableness is the degree of success obtained. *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).[5]

■ However, in the instant matter, an analysis of the *Johnson* factors is unnecessary as this court finds that Plaintiff is not entitled to attorney's fees. Courts have generally held that when a prevailing party is awarded only nominal damages, attorney's fees should not be awarded. *See Farrar v. Hobby* and *Cramblit v. Fikse,* discussed *infra.*

In *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the plaintiffs were able to establish liability, but could not prove the actual injury necessary for a compensatory damages award. Therefore, as in the case *sub judice,* the jury in *Farrar* awarded the plaintiffs one dollar in nominal damages. Based upon this outcome, the *Farrar* Court held that the plaintiffs were "not entitled to a fee award." The Court further held:

> While the technical nature of a nominal damages award does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988. The most critical factor in determining a fee award's reasonableness is the degree of success obtained, since a fee based on hours expended on the litigation as a whole may be excessive if a plaintiff achieves only partial or limited success. [Cite omitted.] *When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at*

*all.* In light of the relationship between the extent of the petitioner's success on the merits and the award's amount, the reasonable fee was not the District Court's $280,000 award but no fee at all.

*Id.* at 103–104, 113 S.Ct. 566(syllabus)(emphasis added).

The *Farrar* Court further noted that the litigation accomplished little beyond giving the plaintiffs the moral satisfaction of knowing that a federal court concluded that their rights had been violated. *Id.* at 114, 113 S.Ct. 566. Even less was accomplished in the instant case since four months prior to filing the case at bar, Plaintiff was reinstated to the juvenile officer position after succeeding in a grievance and arbitration procedure.

The Sixth Circuit, in *Cramblit v. Fikse,* 33 F.3d 633 (6th Cir.1994), followed the Farrar Court's decision and affirmed the trial court's denial of plaintiff attorney's fees when jury returned a verdict for plaintiff in the amount of one dollar ($1). In *Cramblit,* the plaintiff argued that she had a great "degree of success" despite the one dollar nominal damage award. The plaintiff further argued that her goal was not monetary but rather, to vindicate her constitutional rights and further prevent constitutional violations. The Sixth Circuit rejected the argument that the plaintiff's goals were intangible.

Similarly, in the case *sub judice,* counsel for Plaintiff, in her closing arguments did not focus on the vindication of Plaintiff's rights, rather, she discussed damages with respect to pain and suffering. Excerpt of Trial Transcript at 3, ln. 21–22. Plaintiff's counsel further argued:

> L.Ed.2d 40. The Supreme Court's decision in *Hensley* was decided within the context of a fee award pursuant to 42 U.S.C. § 1988. The Court also noted that "[t]he standards set forth in [the] opinion are generally applicable in *all cases in which Congress has authorized an award of fees to a 'prevailing party.'*" 461 U.S. at 433 n. 7, 103 S.Ct. 1933. (emphasis added).

---

**5.** It is important to note that the standards for evaluating motions for attorney's fees under 42 U.S.C. § 2000e–5(k) of Title VII, such as the instant motion, and those brought under 42 U.S.C. § 1988 "are identical." *Harvey–Williams v. Peters,* 117 F.3d 1420, 1997 WL 397234, * 3, 1997 U.S.App. LEXIS 17735 (6th Cir. July 10, 1997) at *8, *citing Hensley,* 461 U.S. 424, 433, n. 7, 103 S.Ct. 1933, 76

that "the most important thing I would like to convey to you is if and when you consider the issue of damages, be reasonable. Jan only wants what you think she is entitled to .... [m]y job is to give you an idea of dollars.... I would like to suggest that anywhere between $100,-000 and $400,000 in pain and suffering damages would be reasonable."

Excerpt of Transcript of Trial at 4, ln. 3–11.

Plaintiff also admits that back pay and compensatory damages are the only remedies sought by her on the discriminatory transfer. Application for Attorney's Fees at 3. Thus, since the jury awarded one dollar in nominal damages and this Court has already determined that she is not entitled to back pay, Plaintiff has failed to prove a compensable injury which is an essential element when seeking $100,000 to $400,000 in compensatory damages. In sum, Plaintiff failed to prevail on all of her claims [6] except sex discrimination for which she received no actual damages. Therefore, the only reasonable attorney's fee is no fee at all.

Numerous other courts have also held that a *de minimis* result will justify the exercise of the court's discretion in denying plaintiff attorney's fees and costs. *McCardle v. Haddad,* 131 F.3d 43 (2d Cir. 1997)(where $1.00 in nominal damages awarded, district court's attorney's fees award of $.33 affirmed); *Pino v. Locascio,* 101 F.3d 235 (2d Cir.1996)(where $1.00 in nominal damages awarded, district court's award of attorney's fees reversed and remanded with instruction to deny plaintiff's application for attorney's fees and costs); *Briggs v. Marshall,* 93 F.3d 355 (7th Cir. 1996)(where $1.00 in nominal damages awarded, district court's denial of attorney's fees affirmed); *Caruso v. Forslund,* 47 F.3d 27 (2d Cir.1995)(where judgment for nominal damages of $1.00 entered by district court, denial of application for at-

torney's fees affirmed); *Milton v. Des Moines, Iowa,* 47 F.3d 944 (8th Cir. 1995)(where $1.00 nominal damages awarded, denial of attorney's fees and motion for costs affirmed). Accordingly, Plaintiff is not entitled to attorney's fees and costs on a $1.00 award of nominal damages. Therefore, Plaintiff's Motion for Attorney's Fees and Costs is **DENIED**.

## CONCLUSION

Plaintiff has failed to demonstrate that she has suffered a loss of wages or benefits as a result of the discriminatory transfer from the juvenile officer position to the patrol division. Therefore she is not entitled to a back pay award. Moreover, the nominal damages award of one dollar represents only a *de minimis* victory. While there is no dispute that Plaintiff is the "prevailing party" for purposes of 42 U.S.C. § 2000e–5(k), attorney's fees are not warranted due to the limited success of her case. Based upon the foregoing reasons, Plaintiff's Motion for Back pay (Dkt. No. 224) and Motion for Attorney's Fees and Costs (Dkt. No. 225) are **DENIED**.

**IT IS SO ORDERED.**

---

6. As previously discussed, many of Plaintiff's claims did not survive dispositive motions. Additionally, the Court granted judgment as a matter of law on Plaintiff's retaliation claims after the Plaintiff's case-in-chief. The jury

returned a Defendants' verdict on the age discrimination claims and awarded Plaintiff one dollar in nominal damages for sex discrimination.