186 F.3d 183 (2nd Cir. 1999)
 GITTEL GORDON, Plaintiff-Counter-Defendant-Appellant-Cross-Appellee,
v.
MATTHEW BENDER & COMPANY, INC., Defendant-Counter-Claimant-Appellee-Cross-Appellant.
 Docket Nos. 98-9115, 98-9155
No. 1793--August Term, 1998
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: June 21, 1999
Decided: July 27, 1999
 
 Appeals from a judgment entered following a jury trial in the United States District Court for the Southern District of New York (Baer, J.).
 Affirmed in part, vacated in part, and remanded.
 JAMES V. JORDAN, Santa Monica, CA (Appellate Resources Group, on the brief), for Plaintiff-Counter-Defendant-Appellant-Cross-Appellee.
 MITCHELL A. KARLAN, New York, NY (Marshall R. King, Thomas C. Sheehan, Gibson, Dunn & Crutcher LLP, on the brief), for Defendant-Counter-Claimant-Appellee-Cross-Appellant.
 Before: MINER, JACOBS, and PARKER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Gittel Gordon entered into two contracts with publisher Matthew Bender & Co., Inc., under which she agreed to write and update two immigration law treatises. The first contract, dated August 15, 1980, required Gordon to edit and update a one-volume desk edition of an immigration law treatise (the "Desk Edition"). The second contract, dated May 19, 1983, required Gordon to write and update a two-volume treatise intended for use by practicing immigration lawyers (the "Practice Volumes"). Bender terminated Gordon's contracts on May 30, 1995 for, inter alia, failing to meet Bender's deadlines and performance requirements. Gordon sued Bender for breach of contract seeking lost royalties. The jury awarded Gordon $360,000 on her Desk Edition claim, but found in favor of Bender on her Practice Volumes claim. The district court entered judgment on October 15, 1997, and two weeks later amended that judgment to include pre-judgment interest on the entire damages award.
 
 
 2
 Bender moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) on the Desk Edition claim, and pursuant to Fed. R. Civ. P. 59(e) to amend the amended judgment to exclude pre-judgment interest. Gordon cross-moved pursuant to Rule 50(a) on the Practice Volumes claim, and alternatively for a new trial pursuant to Rule 59(a). In an opinion and order dated July 21, 1998, the United States District Court for the Southern District of New York (Baer, J.) denied each motion. See Gordon v. Matthew Bender & Co., No. 96 Civ. 4269, 1998 WL 414931 (S.D.N.Y. July 22, 1998). These appeals followed.
 
 A. The Practice Volumes Claim
 
 3
 We review the district court's denial of Gordon's Rule 50(a) motion de novo, and will reverse the denial of judgment as a matter of law "only if, notwithstanding making all credibility assessments and drawing all inferences in favor of [Bender], a reasonable juror would be compelled to accept the view of [Gordon]." See EEOC v. Ethan Allen, Inc., 44 F.3d 116, 119 (2d Cir. 1994).
 
 
 4
 Bender adduced evidence that it rejected one of Gordon's submissions of supplemental materials (Release 63), and argues that under clause 3 of the Practice Volumes contract, the contract was therefore terminated. Clause 3 provides: "In the event that Bender shall reject such manuscript or other material, this agreement shall be deemed to have been terminated." (Emphasis added). Gordon argues that clause 5 of the Practice Volumes contract (not clause 3) governs supplemental materials, and unambiguously requires that Bender reject two consecutive submissions of supplemental materials before it could terminate the contract. Clause 5 provides:
 
 
 5
 If the Author shall fail, for any reason whatsoever, to prepare the upkeep service for his treatise for two consecutive releases, his right to prepare the upkeep service shall cease and Bender shall have the right to have all future supplements and revisions for the treatise prepared by others.
 
 
 6
 It is undisputed that Bender timely rejected only one supplemental submission; however, Gordon's reading of the contract is not the only possible reading of clause 5.
 
 
 7
 One perfectly sound understanding of the parties' intent is that clause 5 applies to Gordon's failure to submit supplements or revisions, while clause 3 applies to Bender's rejections of inadequate material (i.e., supplements, revisions, or manuscript treatises). Since (at least) one set of supplemental materials--Release 63--was duly rejected, the jury could find that Bender properly exercised its contractual right to terminate the Practice Volumes contract.
 
 
 8
 Gordon also argues that Bender was precluded from terminating the contract, because Bender continued to accept performance under the contract after breach. However, even if the jury concluded that Bender initially elected not to terminate the contract pursuant to clause 3, the jury could have found -under the charge that was given, and as to which Gordon did not object -that Gordon was subsequently in material breach by turning in substandard work and by failing to meet deadlines, a state of affairs that forced Bender to hire other authors and editors. See Lavoie v. Pacific Press & Shear Co., 975 F.2d 48, 55 (2d Cir. 1992) ("[L]itigants do not get another opportunity to assign as error an allegedly incorrect charge simply because the jury's verdict comports with the trial court's instructions."); cf. Apex Pool Equip. Corp. v. Lee, 419 F.2d 556, 562-63 (2d Cir. 1969) (an election not to terminate the contract for a specific breach does not waive the right to terminate the contract for succeeding breaches). The jury instruction given was not plain or fundamental error, and in any event, there was sufficient evidence for a reasonable jury to find in favor of Bender on the Practice Volumes claim. The denial of Gordon's Rule 59(e) motion was not an abuse of discretion. See McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983) (per curiam).
 
 B. The Desk Edition Claim
 
 9
 The district court denied Bender's Rule 50(a) motion on Gordon's Desk Edition claim on the ground that "[t]he jury quite reasonably could have determined that Gordon fully performed her contractual obligations pursuant to the Desk Edition agreement." We agree.
 
 
 10
 Bender argues that it had the right to terminate the contract because revisions to the Desk Edition demanded by Bender's January 4, 1993 letter to Gordon were never made. Testimony on that subject was arguably in conflict. Gordon's editors at Bender testified that she did not make the required revisions. Gordon testified generally that she "updated [the] book from 1980 until 1995 when I was terminated . . . [a]t every date that they gave me to update it, I updated it and revised it." The jury was entitled to resolve this conflicting testimony in favor of Gordon. See This Is Me, Inc. v. Taylor, 157 F.3d 139, 142 (2d Cir. 1998) (in deciding a Rule 50(a) motion, the district court is not permitted to "weigh[] the credibility of the witnesses or otherwise consider[] the weight of the evidence" (internal quotation marks omitted)).
 
 C. Pre-judgment Interest
 
 11
 The October 13, 1997, judgment in favor of Gordon on the Desk Edition claim was entered in the amount of $360,000. On October 29, 1997, the district court sua sponte entered an amended judgment awarding pre-judgment interest on the entire damages award. Bender's Rule 59(e) motion to amend the amended judgment and reinstate the original judgment was denied by an order of the district court entered on July 22, 1998. We conclude that the district court erred in awarding pre-judgment interest on an award that likely included both pre-judgment and post-judgment damages.
 
 
 12
 Two years intervened between the breach and the entry of judgment. According to the testimony of Gordon's expert, Gordon earned an average of $30,860 per year in royalties on the Desk Edition contract. Bender argues therefore that $72,965 (at most) of the $360,000 judgment was attributable to pre-judgment losses, and that the district court abused its discretion in awarding Gordon pre-judgment interest on the entire award. We agree.
 
 
 13
 "The purpose of a prejudgment interest award . . . is to compensate a plaintiff for the loss of use of money...." Chandler v. Bombardier Capital, Inc., 44 F.3d 80, 83 (2d Cir. 1994). Consequently, "an award of pre-judgment interest is not appropriate with respect to an award of damages for future losses... and if there [is] a reasonable basis for inferring that part of the jury's award sought to compensate for future losses,... the district court [should] determine what portion of the award should be attributed to each category of loss." Gierlinger v. Gleason, 160 F.3d 858, 875 (2d Cir. 1998) (internal citations omitted).
 
 
 14
 As the testimony of Gordon's own expert demonstrates, it is likely that the award of pre-judgment interest is excessive in this case because the $360,000 award probably included both pre-judgment and discounted post-judgment losses. We therefore remand for a determination as to the amount of the award attributable to pre-judgment losses, and for the award of pre-judgment interest on that portion of the award only.
 
 
 15
 ***
 
 
 16
 The judgment of the district court is affirmed as to the Practice Volumes and Desk Edition claims. The award of pre-judgment interest on the entire $360,000 award is vacated, and we remand for recalculation of the interest award on only pre-judgment losses.