290 F.3d 98
 MEDFORMS, INC., Plaintiff-Counter-Defendant-Appellant-Cross-Appellee,
v.
HEALTHCARE MANAGEMENT SOLUTIONS, INC., d/b/a Healthcare Informatics, Inc., a Delaware Corporation, and Ernest L. Lang, Defendants-Appellees-Cross-Appellants.
Medvar, Inc., Defendant-Third-Party Plaintiff-Counter-Claimant-Appellee-Cross-Appellant,
v.
Bruce Gallit, Third-Party Defendant.
 Docket No. 01-7678(L).
 Docket No. 01-7724(XAP).
 United States Court of Appeals, Second Circuit.
 Argued December 10, 2001.
 Decided May 7, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED W. James MacNaughton, Woodbridge, NJ, for Plaintiff-Counter-Defendant-Appellant-Cross-Appellee.
 Jonathan Robert Nelson, New York, NY (Law Office of Jonathan Robert Nelson, of counsel), for Defendants-Appellees-Cross-Appellants and Defendant-Third-Party Plaintiff-Counter-Claimant-Appellee-Cross-Appellant.
 Before: OAKES, CARDAMONE and POOLER, Circuit Judges.
 OAKES, Senior Circuit Judge.
 
 
 1
 Plaintiff-counter-defendant-appellant-cross-appellee Medforms, Inc. ("Medforms") appeals from judgments of the United States District Court for the Southern District of New York, William H. Pauley III, Judge, dismissing its complaint after a jury trial and denying its motions for judgment as a matter of law and for a new trial. The district court found more than sufficient evidence from which the jury could have reasonably concluded that the defendants rebutted the validity of the plaintiff's copyright registrations because the purported author had not contributed original material. Because we find that an author can be a person who translates an original idea into a fixed expression or a person who authorizes another to do so, we affirm.
 
 
 2
 Defendants-appellees-cross-appellants, Healthcare Management Solutions, Inc. d/b/a Healthcare Informatics, Inc. ("Healthcare Informatics") and Ernest L. Lang, and defendant-third-party-plaintiff-counter-claimant-appellee-cross-appellant Medvar, Inc. ("Medvar"), appeal from judgments of the district court granting partial summary judgment to Medforms, dismissing Medvar's counterclaim as abandoned, and denying the defendants' motion for attorneys' fees and costs. We affirm the denial of the motion for attorneys' fees, remand for clarification of the district court's judgment dismissing the counterclaim, and decline to reach the grant of partial summary judgment as moot.
 
 BACKGROUND
 
 3
 This case involves two computer programs, "FormFree" and "Superbill Express," which are designed to create and print forms for use in medical offices. The history of the two programs began prior to 1989, when MedPlus, Inc. ("MedPlus"), a computer and software company, was distributing "Medical Manager," a billing and collection software package used by doctors. Medical Manager could not, by itself, print the many different claim forms insurance carriers were requiring doctors to use. Instead, doctors purchased the forms from the insurance carriers and hand-fed them into their printers. In 1989, in response to this problem, Yosef Gold, a computer programmer and minority partner in MedPlus, designed, and MedPlus began distributing, "Laser Forms Module," a computer program that enabled Medical Manager users to print their own insurance claim forms without having to separately purchase and hand feed the forms.
 
 
 4
 In October 1989, Igor Modlin began working for MedPlus as a computer programmer. He was not paid initially. In November 1989, MedPlus began paying Modlin "off the books," and, in August 1991, Modlin went onto MedPlus's official payroll. Under Gold's supervision, Modlin began revising Laser Forms Module. The revised program became known as FormFree. FormFree performed many of the same functions as Laser Forms Module but could be "serialized," which prevented customers from making unauthorized copies of FormFree without having the requisite code.
 
 
 5
 FormFree consisted of three parts: 1) the form files containing the data necessary to print various insurance forms; 2) the format files that provided instructions to Medical Manager about where to print specific data on the form; and 3) the core executable program that instructed the computer to assemble and print the completed claim forms and contained the serialization capabilities.
 
 
 6
 FormFree was revised several times, resulting in versions 1.0 through 2.0. Gold designed the specifications for revisions to the program for each version. FormFree's form and format files were adopted from the form and format files used in Laser Forms Module, which were written entirely by Gold. These files were not materially changed when Laser Forms Module was revised and FormFree was created. No version of FormFree could print forms containing Medical Manager patient information without the form and format files.
 
 
 7
 Modlin worked on the source code for the serialization and encryption aspects of the core executable program in versions 1.0 through 1.7. Source code is a mathematical set of instructions that a computer converts into an executable program that can then be distributed and run by other computers. Source code is generally proprietary and not given out to the public. Modlin was responsible for inputting the information into the computer to create the source code. Gold testified that he told Modlin "specifically what to do and how to do it" in writing the source code for the FormFree core executable program while Modlin testified that his work was largely independent of direction from Gold.
 
 
 8
 While at MedPlus, Modlin also worked on "Superbill Express." A "superbill" is a form used by doctors that combines standard diagnostic codes with billing information. Superbill Express consisted of three parts that were not visible to an end user: 1) "SBX," which enabled the doctor to input information that would be contained on the superbill; 2) "Super," which put information in columns and laid out the form; and 3) "Parse," which put the form into the computer language commonly understood by printers. Without the Super and Parse programs, Superbill Express could not print Medical Manager client information onto a form with a laser printer.
 
 
 9
 The first version of Superbill Express allowed MedPlus to prepare computerized "superbills" but was never distributed outside of MedPlus. Gold created the first version of Superbill Express, version 1.0, in 1988. The initial version contained all three parts of the program but the parts were not integrated, meaning that multiple steps were required to use the program. Version 1.7 of the software was the first version that integrated the three parts of the program so that Superbill Express could be marketed directly to clients. Modlin worked on the SBX source code for versions 1.7 through 2.0, though the first version he spent any significant time on was version 2.0. As with FormFree, conflicting evidence was presented at trial about the extent and independence of his work on the SBX source code.
 
 
 10
 Modlin left MedPlus in March 1992. He went to work for Northeastern Medical ("NEM"), MedPlus's rival in the distribution of Medical Manager. Bruce Gallit was the principal of NEM at the time. Gallit and Modlin formed a new company called Medforms, Inc. On advice of counsel, Modlin assigned any copyrights in his work to Medforms, which then filed for and obtained two copyright registrations.
 
 
 11
 The first copyright registration states that the title of the work is "FormFree" and the nature of authorship is the "[e]ntire computer program for creating forms on laser printer." The second copyright registration states that the title of the work is "Superbill Express (SBX)" and the nature of authorship is the "[e]ntire computer program—allows ... forms to be designed and print[sic] on laser print[er]." Despite the registrations' claim to cover entire computer programs, designed to print forms, Medforms did not provide the Copyright Office with the FormFree form and format files or the Superbill Express Super and Parse files, which are required for the printing process. In addition, the copyright registrations do not mention the preexisting programs from which they derived or Gold's involvement in their creation.
 
 
 12
 In 1994, MedPlus went out of business. MedPlus assigned its rights to the FormFree and Superbill Express software to Gold and to Avi Moskowitz, MedPlus's founder. Gold and Moskowitz assigned the rights to Medvar, a digital value-added reseller. Medvar then licensed Healthcare Informatics to copy and distribute the software.
 
 
 13
 In January 1995, counsel for Medforms notified Healthcare Informatics and Ernest L. Lang, the president of Healthcare Informatics and officer and director of Medvar, that Medforms had copyrights in the FormFree source code and the Superbill Express source code. Medforms demanded that Lang and Healthcare Informatics cease and desist from making and distributing unauthorized copies of both programs. The defendants refused.
 
 
 14
 In July 1997, Medforms brought suit against Medvar, Lang, and Healthcare Management Solutions d/b/a Healthcare Informatics for copyright infringement. Medvar counterclaimed, seeking a declaratory judgment that it owned the copyrights and that Medforms's registrations were null and void.
 
 
 15
 On June 24, 1999, the district court granted partial summary judgment to Medforms. The court found that, as a matter of law, Modlin was not a Medforms employee when he worked on the FormFree software and dismissed the defendants' affirmative defense that FormFree belonged to MedPlus under the "work made for hire" doctrine.
 
 
 16
 The infringement claims and remaining defenses were then tried before a jury. The district court submitted the case to the jury with a series of special verdicts as to Medforms's infringement claims and the defendants' affirmative defenses. Neither the jury instructions nor the verdict form included anything about Medvar's counterclaim.
 
 
 17
 The first six questions on the special verdict form asked whether Medforms had proven by a preponderance of the evidence that any of the defendants infringed its copyright in FormFree or Superbill Express. The jury answered "No" to all six questions. The verdict form instructed the jury that, if it answered "No" to each question regarding infringement, it had reached a verdict for the defendants and, therefore, should not answer the remaining questions regarding the defendants' special defenses.
 
 
 18
 Medforms timely moved for a new trial pursuant to Fed.R.Civ.P. 59 and for entry of judgment declaring its claimed copyrights valid pursuant to Fed.R.Civ.P. 50. The district court denied the motions. The court found that the "defendants presented more than sufficient evidence from which the jury could have reasonably concluded, as instructed, that defendants rebutted plaintiff's claim that Mr. Modlin was the author of the registered programs." With respect to Medforms's Rule 50 motion, the court found that neither the plaintiff nor the defendants sought a declaratory judgment as to the validity of the copyrights and, therefore, the validity issue had not been "fully heard."
 
 
 19
 The defendants moved for attorneys' fees and costs. Finding Medforms's claim neither frivolous nor objectively unreasonable, the district court denied the motion.
 
 
 20
 On or about April 18, 2000, Medforms timely filed a Notice of Appeal. On or about October 30, 2000, the parties stipulated to a withdrawal of the appeal because "there was no adjudication or dismissal with prejudice of Medvar's counterclaim against Medforms." The district court held two pre-trial conferences and then sua sponte dismissed Medvar's counterclaim as abandoned. This appeal followed.
 
 DISCUSSION
 I. Medforms's Appeal
 
 21
 Medforms raises several issues on appeal. First, Medforms argues that it was entitled to a new trial because the trial court abused its discretion by applying the incorrect legal standard for copyright authorship. Second, Medforms argues it was entitled to judgment as a matter of law that it has a valid copyright registration in FormFree and Superbill Express. Third, Medforms argues that the district court should not have dismissed its complaint because the jury did not determine who owned the copyrighted works. Fourth, Medforms argues that the trial court erred by admitting "expert" testimony that did not comport with Fed.R.Evid. 702 and by allowing a defense witness to use a demonstrative aide. Finally, Medforms argues that the trial court's jury instructions on "unclean hands" and "joint ownership" were in error. We address each argument in turn.
 
 
 22
 A. Medforms's Rule 59 Motion for a New Trial
 
 
 23
 We review the district court's denial of a motion for a new trial for abuse of discretion. Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 623 (2d Cir.2001). "`A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" Id. at 623-24 (quoting Atkins v. New York City, 143 F.3d 100, 102 (2d Cir.1998)). In reviewing the district court's decision, "`we must view the evidence in the light most favorable to the nonmoving party.'" Id. at 624 (quoting Caruolo v. John Crane, Inc. 226 F.3d 46, 54 (2d Cir.2000)).
 
 
 24
 Medforms argues that the district court abused its discretion because it applied the incorrect legal standard to find that the jury could have reasonably found that Modlin was not the "author" of FormFree and Superbill Express. According to Medforms, the author of a work is the person who gives "tangible expression" to an idea. Therefore, only Modlin could be the author of the copyrighted works because he expressed the ideas for improving the programs in the tangible form of source code.
 
 
 25
 In its ruling on the motion for a new trial, the district court found that Medforms's definition of "author" mischaracterized the law because it did not include the requirement that an author contribute original material. Thus, although Medforms's certificates of registration constituted prima facie evidence of authorship, the court found more than sufficient evidence from which the jury could have concluded that the defendants rebutted Medforms's claim that Modlin was the author of the registered programs because he had not contributed original material.[1]
 
 
 26
 The 1976 Copyright Act does not explicitly define what it means to be an "author" for copyright purposes. Childress v. Taylor, 945 F.2d 500, 506 (2d Cir.1991). We have held, though, that to be an "author," a person must create copyrightable work. Id. at 506-07; cf. David Nimmer, Copyright in the Dead Sea Scrolls: Authorship and Originality, 38 Hous. L.Rev. 1, 175 (2001) (asserting that the concepts of authorship and copyrightable work are "bound to each other").
 
 
 27
 Copyrightable work must be "original" and "fixed" in a "tangible medium of expression." 17 U.S.C. § 102(a) (1994) ("Copyright protection subsists ... in original works of authorship fixed in any tangible medium of expression...."). "Original, as the term is used in copyright, means only that the work was independently created by the author [or authors],... and that it possesses at least some minimal degree of creativity." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Consequently, an author is "`he to whom anything owes its origin; originator; maker.'" Id. at 346, 111 S.Ct. 1282 (quoting Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 58, 4 S.Ct. 279, 28 L.Ed. 349 (1884)); see also L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 490 (2d Cir.1976) (en banc) ("Originality means that the work owes its creation to the author."); 1 M. Nimmer & D. Nimmer, Nimmer on Copyright § 2.01 (2001) ("[B]ecause an author is `the beginner ... or first mover of anything... creator, originator,' it follows that a work is not the product of an author unless the work is original.") (footnote omitted).
 
 
 28
 Copyright protection does not, however, extend to an idea just because it is original. 17 U.S.C. § 102(b) (1994). Thus, in addition to being original, copyrightable work must be "fixed" in a tangible medium of expression. A work is considered "fixed" when "its embodiment in a copy ... by or under the authority of the author, is sufficiently permanent or stable to permit it to be ... reproduced[.]" Id. § 101 (1994 & Supp. V 1999) (emphasis added). Accordingly, "[a]s a general rule, the author is ... the person who translates an idea into a fixed, tangible expression," Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 737, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), but an "author" can authorize another to "fix" his original idea. Andrien v. S. Ocean County Chamber of Commerce, 927 F.2d 132, 134 (3d Cir.1991).
 
 
 29
 In Andrien, the Third Circuit considered the limits of authorizing another to embody or "fix" a work in a tangible medium. 927 F.2d at 134-35. The court concluded that "[w]hen one authorizes embodiment, that process must be rote or mechanical transcription that does not require intellectual modification or highly technical enhancement." Id. at 135 (citations omitted). Therefore, a person who merely fixes another's ideas or expression through "rote or mechanical transcription" is not an author for copyright purposes. Id. The Andrien court compared the relationship between the plaintiff, who had assembled a series of maps, and the printing firm, which had prepared a composite of the maps to that of a performer and record producer. Id. The court noted that, although authorship can apply to both the performer and the producer, "[i]n some cases ... the record producer's contribution could be so minimal that the performance is the only copyrightable element in the work." Id.
 
 
 30
 The limits on copyright thus make it clear that both tangibility and originality are necessary aspects of authorship. A person is not an author if he has an original idea that is not expressed in tangible form, and a person is not an author if he expresses another's idea in tangible form without any original contribution.
 
 
 31
 In the present case, the district court's emphasis on originality was not an abuse of discretion because the evidence supported a finding that Modlin did not make an original contribution to the work. First, evidence was presented that, based on the copyright registrations, the copyrighted works at issue were the entire FormFree and Superbill Express programs, not just the source codes on which Modlin worked.[2]
 
 
 32
 Second, with regard to FormFree, Gold's testimony indicated that, although Modlin worked on the source code for the core executable program, Gold "would tell [Modlin] specifically what to do and how to do it and what kind of encryption to use, how to encrypt the files step-by-step exactly what had to be done." Gold also wrote the three parts of the program that preceded FormFree, and the format files, laser forms, and forms that made up the original version were essentially the same as those used in FormFree. Additionally, the FormFree program could not function without the forms and format files, on which Modlin did not work.
 
 
 33
 Third, with regard to Superbill Express, the defendants presented evidence that Gold wrote the first eight versions of Superbill Express and that any contributions Modlin made to the ninth version were minor. In addition, although Modlin worked on the revision of the SBX source code for version 2.0, evidence suggested he did not independently write any of the modules (files that perform a specific function) for the revisions.
 
 
 34
 Viewing the evidence in the light most favorable to the defendants, the jury could reasonably conclude that Gold authorized Modlin to embody his ideas for revising FormFree and Superbill Express in a copy, but that Modlin's work was insufficiently original for authorship. The district court thus emphasized originality in its ruling because originality was the criterion of authorship that, based on the evidence, the jury could have reasonably found Modlin lacked. Such an emphasis does not constitute an abuse of the trial court's discretion.
 
 
 35
 Medforms argues that, even if the district court did not rely on an incorrect standard for authorship, the court erred by relying on Gold's control of Modlin as a basis for denying the motion for a new trial because the jury did not make a specific finding that Modlin was under Gold's control. According to Medforms, the issue of Gold's control of Modlin was only relevant to the "work made for hire" defense. The district court dismissed the defendants' "work made for hire" defense as to FormFree on Medforms's motion for summary judgment, and the jury never reached the affirmative defense as to Superbill Express because it found "no infringement." Therefore, Medforms argues, the court had no authority to rely on Gold's control of Modlin to support the jury's verdict.
 
 
 36
 We disagree. First, the district court did not solely rely on Gold's control of Modlin as a basis for its decision. In its ruling, the court quoted Gold's testimony that he told Modlin exactly what had to be done to create the source code for FormFree. The court then stated that the jury was entitled to credit this testimony. Such testimony goes to Gold's own involvement in the creation of FormFree, not just his control over Modlin.
 
 
 37
 Second, even where work is not "work made for hire," control over the creation of the work can be relevant to determining authorship. In Andrien, the lower court found that the composite map at issue was not a "work made for hire." 927 F.2d at 134. Despite this finding, the plaintiff's control over the printing company was an issue on appeal in determining authorship. The court found that, although the printing company had produced the map, the plaintiff was the author because he "expressly directed the copy's preparation in specific detail." Id. at 135. Gold's control over Modlin was similarly relevant to the jury's consideration of the authorship of FormFree and Superbill Express, and, as in Andrien, the evidence in this case supports a finding that Gold did much more than give general assistance or describe an idea to Modlin. See, e.g., S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1087 (9th Cir.1989) (finding that describing to an author what a commissioned work should do or look like is not sufficient for authorship).
 
 
 38
 Finally, because the two elements of copyright infringement are "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original," Feist, 499 U.S. at 361, 111 S.Ct. 1282, a finding of invalidity for any reason provides a sufficient basis for the jury's verdict of "no infringement." Based on the evidence in this case, the jury could have reasonably concluded that the copyright registrations were invalid because Modlin was not an author of FormFree or Superbill Express or because the copyright registrations contained material inaccuracies. Because the evidence supports the jury's verdict on these grounds, the jury did not reach a seriously erroneous result and the verdict was not "a miscarriage of justice." Hugo Boss, 252 F.3d at 623-24. Therefore, we find the district court did not abuse its discretion in denying Medforms's motion for a new trial.
 
 B. Medforms's Rule 50 Motion
 
 39
 We review de novo the district court's denial of Medforms's Fed.R.Civ.P. 50 motion for judgment as a matter of law. Gordon v. Matthew Bender & Co., Inc., 186 F.3d 183, 184 (2d Cir.1999) (per curiam). We "will reverse the denial of judgment as a matter of law `only if, notwithstanding making all credibility assessments and drawing all inferences in favor of [the defendants], a reasonable juror would be compelled to accept the view of [Medforms].'" Id. (quoting EEOC v. Ethan Allen, Inc., 44 F.3d 116, 119 (2d Cir.1994)).
 
 
 40
 The defendants argue that Medforms had no right to make its Rule 50 motion after trial because it did not move for a directed verdict at the close of evidence. See Fed.R.Civ.P. 50(b); Gibeau v. Nellis, 18 F.3d 107, 109 (2d Cir.1994) ("Where a party has failed to move for a directed verdict, a court generally may only consider a judgment n.o.v. motion to prevent `manifest injustice.'" (citation omitted)). Medforms correctly notes, however, that the defendants failed to raise this procedural issue below. "Where a party has failed to raise an argument in the district court, an appellate court may only consider the argument where necessary to serve an `interest of justice.'" Gibeau, 18 F.3d at 109 (citation omitted). Because the defendants have not demonstrated that any interest of justice would be served by considering the waiver argument on appeal, such argument has been waived.
 
 
 41
 Turning to the merits of the Rule 50 motion, Medforms sought a declaration that it owned the copyrights in FormFree and Superbill Express. Medforms argues that, as a matter of law, Modlin is the only author of the FormFree and Superbill Express source codes and therefore Medforms's copyright registrations are valid.
 
 
 42
 Authorship is generally a question of fact for the jury. Andrien, 927 F.2d at 134 (citing S.O.S., 886 F.2d at 1086). In this case, the jury heard conflicting evidence about whether the copyrighted works were source codes or entire programs, whether Modlin's involvement in the creation of the source codes was supervised or independent, and whether Gold contributed to the creation and revision of the source codes. The jury was free to credit the evidence presented by the defendants. Viewing that evidence in the light most favorable to the defendants, a reasonable juror could conclude that Modlin was not the only author of the copyrighted works.
 
 C. Dismissal of the Complaint
 
 43
 Medforms argues that the district court erred by dismissing its complaint after the jury's verdict because the jury did not determine who owns the copyrighted works. We disagree.
 
 
 44
 In its complaint, Medforms sought: 1) damages for copyright infringement; 2) an injunction directing the defendants to return copies of the software; and 3) an injunction enjoining any future copying of the software. Medforms did not seek a declaratory judgment or any other type of relief related solely to the ownership of the copyrights.
 
 
 45
 Based on the relief requested in the complaint, the jury's verdict was complete. As the verdict form directed, if the jury answered "No" to the questions regarding infringement, it reached a verdict for the defendants. The jury's verdict thus determined that Medforms was not entitled to the relief it sought in its complaint, namely, damages for copyright infringement and enjoinment from future use.[3] Therefore, the district court did not err by dismissing the complaint after accepting the jury's verdict.
 
 D. Rulings During Trial
 
 46
 Medforms argues that: 1) the court erred by allowing Gold to give "expert" testimony about the meaning of the term "program" and about the significance of Modlin's involvement in FormFree and Superbill Express; and 2) the court erred by allowing Gold to use a programming utility during his testimony. The evidentiary rulings of the district court are entitled to substantial deference and are reviewed only for clear abuse of discretion. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141-43, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); Schering Corp. v. Pfizer Inc., 189 F.3d 218, 224 (2d Cir.1999). "[E]ven an erroneous evidentiary ruling will not lead to reversal unless affirmance would be `inconsistent with substantial justice.'" Perry v. Ethan Allen, Inc., 115 F.3d 143, 150 (2d Cir.1997) (quoting Fed.R.Civ.P. 61).
 
 
 47
 We find no abuse of discretion in the district court's evidentiary rulings. Gold's testimony with regard to the significance of Modlin's work on FormFree and Superbill Express and with regard to the meaning of the term "programs" as used in the copyright registrations satisfied the requirements for lay opinion testimony. Fed.R.Evid. 701; see also Lightfoot v. Union Carbide Corp., 110 F.3d 898, 911-12 (2d Cir.1997). His opinions were rationally based on his perceptions as Modlin's supervisor and as a person who worked on FormFree and Superbill Express. Fed.R.Evid. 701(a). His testimony was helpful to the jury's understanding of Modlin's work on FormFree and Superbill Express, a central issue of fact with regard to authorship, and of the meaning of the term "program" as used in the copyright registrations, a central issue of fact with regard to defining the copyrighted works. Fed.R.Evid. 701(b).
 
 
 48
 Gold's testimony was not based on scientific, technical or other specialized knowledge within the scope of "expert testimony." Fed.R.Evid. 701(c). Although part (c) had not been amended to Rule 701 at the time of trial, the spirit of the requirement had been established in case law. See, e.g., Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1193 (3d Cir.1995) (asserting that "the proponent of technical lay opinion testimony must show that the testimony is based on sufficient experience or specialized knowledge"); Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1175 (3d Cir.1993) (finding no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages where testimony was based on his knowledge and participation in the day-to-day affairs of the business). Gold's testimony was based on his everyday experience as a computer programmer and specifically on his work on FormFree and Superbill Express. Therefore, the testimony did not have to satisfy the requirements for expert testimony under Fed.R.Evid. 702, and the admission of the testimony was not an abuse of discretion.
 
 
 49
 We similarly find no abuse of discretion in the trial court's decision to allow Gold to use Windiff, a programming utility that highlights the similarities and differences between source code files. Medforms argues that Windiff was inaccurate and that use of it constituted unfair surprise. The trial court provided an opportunity to Medforms to view the demonstration during a break and permitted Medforms to conduct additional discovery before cross-examining Gold on the Windiff demonstration. Medforms cross-examined the witness using Windiff, presented Modlin as a rebuttal witness to the testimony, and had information about the witness and the subjects about which he would testify. In light of the substantial deference accorded the trial court in making evidentiary decisions, these facts do not point to an abuse of discretion.
 
 E. Jury Instructions
 
 50
 Medforms challenges the trial court's jury instructions on three grounds: (1) that in instructing the jury about "unclean hands" and "joint ownership," the district court erroneously described the works at issue as "software;" (2) that the "unclean hands" instruction was erroneous because it stated that intentional misrepresentation of sole ownership would be material; and (3) that the "joint ownership" instruction was erroneous because it did not inform the jury that a co-author has to show that his contribution to a work "represents original expression that could stand on its own as the subject matter of copyright." In response, the defendants argue that Medforms waived each of these challenges by failing properly to object to the instructions on the grounds raised on appeal.
 
 
 51
 Rule 51 of the Federal Rules of Civil Procedure provides:
 
 
 52
 No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.
 
 
 53
 Fed.R.Civ.P. 51. Thus, "[a] party who fails to object to a jury instruction at trial waives the right to make that instruction the basis for an appeal." Fogarty v. Near N. Ins. Brokerage, Inc., 162 F.3d 74, 79 (2d Cir.1998); see also Caruso v. Forslund, 47 F.3d 27, 30-31 (2d Cir.1995); Anderson v. Branen, 17 F.3d 552, 556-57 (2d Cir.1994). The purpose of Rule 51 is to "allow the trial court an opportunity to cure any defects in the instructions before sending the jury to deliberate." Fogarty, 162 F.3d at 79. Consequently, "no particular formality is required of the objection so long as it is clear that the trial judge was informed of possible errors in the charge and was given an opportunity to correct them." Id. (internal quotation marks omitted). Medforms failed to meet this standard with respect to each of the objections it now raises.
 
 1. Software
 
 54
 Medforms never made any objection to the court's use of the word "software" in describing FormFree and Superbill Express. At different times during the charge conference, Medforms objected to the court's jury instructions on "unclean hands" and "joint ownership." However, Medforms did not mention the court's use of the word "software" in any of those objections. Thus, the trial judge was never informed of or given a chance to correct any possible error in using the word "software."
 
 
 55
 "Where ... the party fails to object to the instruction before the jury begins deliberations, a subsequent challenge based on that charge should be entertained only if the alleged errors are `fundamental.'" Shade v. Hous. Auth. of New Haven, 251 F.3d 307, 312 (2d Cir.2001) (citation omitted). An error is considered fundamental "only if it is `so serious and flagrant that it goes to the very integrity of the trial.'" Id. at 313 (quoting Modave v. Long Island Jewish Med. Ctr., 501 F.2d 1065, 1072 (2d Cir.1974)).
 
 
 56
 In the present case, the copyright registrations for both FormFree and Superbill Express state that the nature of authorship is the "entire computer program" for creating and printing forms. In addition, parts of Medforms's complaint and the jointly-drafted pretrial order refer to FormFree and Superbill Express as "software." Medforms never sought to amend its complaint, nor did it indicate any objection to the use of "software" in the pretrial order. It certainly was not a fundamental error for the court to use language that Medforms itself had used to describe the copyrighted works.
 
 2. Unclean Hands
 
 57
 The relevant discussions between the parties and the court concerning the "unclean hands" instruction occurred during the charge conference. Medforms questioned the meaning of materiality in the "unclean hands" instruction:
 
 
 58
 Mr. MacNaughton: ... the paragraph that talks about Modlin concealing material information from the copyright office, it begs the question of what is material....
 
 
 59
 The Court: What language do you propose with respect to defining "material"?
 
 
 60
 Mr. MacNaughton: It is [the defendants'] affirmative defense. I would like to know what are the material misrepresentations that [they] claim have been made in the copyright registration.
 
 
 61
 . . .
 
 
 62
 Mr. Nelson: With respect to materiality, I think there are two items that are material. One is the date of the first publication alleged, and the other is the claim to be sole author.
 
 
 63
 Medforms went on to argue that the date of publication was not material. After discussion from both parties, the court decided that "[t]he only thing that is material is if Mr. Modlin misrepresented to the Copyright Office that he was the sole author." Medforms then argued that the entire paragraph on materiality was surplus because the issue of whether Modlin misrepresented himself as the sole author was addressed in other parts of the jury instruction. The court rejected this argument, at which point Medforms recommended an instruction:
 
 
 64
 Mr. MacNaughton: Starting, `Defendants may also satisfy this burden of proof by a preponderance of the evidence that Mr. Modlin concealed material information' insert there `concerning the authorship of Form Free ... and Superbill Express.'
 
 
 65
 Mr. Nelson: No, I think `or [Superbill Express].'
 
 
 66
 The Court: `And/or.'
 
 
 67
 Mr. MacNaughton: All right.
 
 
 68
 Medforms did not raise the issue of materiality again prior to the jury retiring to consider its verdict.
 
 
 69
 Medforms argues that its objection that the entire instruction on materiality was surplus was a timely and specific objection that authorship is not material. However, Medforms's primary objection to the instruction was that the date of publication was not material. In fact, Medforms never argued that authorship was not material, only that it was addressed in other parts of the jury instructions. Further, the court adopted the language Medforms recommended, and Medforms seemingly approved of the instruction as amended. Finally, Medforms made no further objection to the "unclean hands" instruction during the charge conference and did not object after the instructions were read to the jury.
 
 
 70
 "To preserve an objection, Rule 51 requires that a party object after the instruction is read to the jury, unless ... `a further objection to the charge as given, on a ground already thoroughly discussed, would have been futile.'" Fogarty, 162 F.3d at 79 (quoting Anderson, 17 F.3d at 557). In Fogarty, the defendant had not made its position with respect to the jury instruction clear to the district court, and the district court had not indicated that it had "overruled" any such position. 162 F.3d at 80. Similarly, Medforms's position that sole authorship is not material as a matter of law was not clear from the discussion during the charge conference, and the district court made no indication that it considered and "overruled" such a position. In light of the fact that the trial court had not been clearly apprised of the possibility of error on the materiality of authorship, Medforms cannot now raise this objection.
 
 
 71
 Although we could disregard Medforms's failure to object and consider the merits of its argument if the alleged error were "fundamental," Shade, 251 F.3d at 312-13, it is by no means clear to us that information about other authors' contributions to a work is never material to copyright registration. Medforms's reliance on 37 C.F.R. § 202.3(b)(9)(ii) n. 5 is unpersuasive. Under 37 C.F.R. § 202.3(b)(9), "[a]s a general rule only one copyright registration can be made for the same version of a particular work." However, "[i]n the case of authors of a joint work, this [regulation] does permit a later registration by one author in his or her own name as copyright claimant, where an earlier registration identifies only another author as claimant." Id. § 202.3(b)(9)(ii) n. 5. The regulation thus allows a co-author to obtain a copy-right registration in his or her name after another author previously obtained a registration in his or her name alone. The regulation does not state, however, that the author who originally obtained the registration did not need to provide information about the co-author's contribution to the work.
 
 
 72
 Further, the presumption of validity afforded a copyright registration may be rebutted by proof of deliberate misrepresentation. See Whimsicality, Inc. v. Rubie's Costume Co., 891 F.2d 452, 455 (2d Cir.1989). In addition, we have previously affirmed the findings of a trial court that the presumption of validity was rebutted where the defendants showed the copyright holder had deliberately misrepresented facts about authorship to the Copyright Office. See Zitz v. Pereira, 119 F.Supp.2d 133, 143-45 (E.D.N.Y.1999), aff'd, 225 F.3d 646 (2d Cir.2000) (unpublished table decision). It was therefore not a fundamental error for the district court to instruct the jury that the defendants could rebut the presumption of validity by a preponderance of the evidence that Modlin concealed material information about authorship.
 
 3. Joint Ownership
 
 73
 During the charge conference, Medforms proposed adding language to the "joint ownership" instruction, which the court accepted. The court's instruction began with the sentence requested by Medforms as follows:
 
 
 74
 A joint work is a work prepared by two or more authors with the intention that their contributions be merged into [in]separable or interdependent parts of a unitary whole. A joint work is one in which two or more persons own the copyright in undivided shares. An individual's contribution must be significant in order for that individual to be considered a joint owner of a work. Hence, if the defendants show that Mr. Modlin and Mr. Gold both made significant contributions to the FormFree and/or Superbill Express software, then these two software programs may properly be considered a joint work if Mr. Modlin and Mr. Gold possessed the requisite intent.
 
 
 75
 The court then went on to explain "intent." Later in the charge conference, Medforms objected to the instruction even with the modification, stating "I am still troubled by the joint ownership instruction.... I just don't think it adequately states the law." At no point did Medforms object to the instruction on the basis that it did not inform the jury that the contribution of each joint author must be copyrightable. Medforms did not object to the instruction after it was read to the jury.
 
 
 76
 Medforms's general objection was insufficient to make its position with respect to the jury instruction clear to the district court, and to give the district court an opportunity to correct any possible error. See Fogarty, 162 F.3d at 80. Medforms requested language that would make it clear to the jury that the authors of a joint work are co-owners of copyright in the work and that a joint work is prepared by the authors with the intention that their contributions be merged. Because Medforms never raised the issue that all contributions to a joint work must be copyrightable, the trial court was not clearly apprised of the possibility of error on this issue. Therefore, Medforms cannot now raise this objection.
 
 
 77
 Whether the court's error was fundamental is a close question. We have held that, in order for a work to be a "joint work," the contribution of each joint author must be copyrightable. Childress, 945 F.2d at 507. The trial court did not instruct the jury that the works could only be "joint works" if Modlin and Gold each contributed something copyrightable on its own.
 
 
 78
 However, an error is considered fundamental "only if it is so serious and flagrant that it goes to the very integrity of the trial." Shade, 251 F.3d at 313 (internal quotation marks and citation omitted). Consequently, "[i]n order to warrant relief, such a `fundamental' error must be even more egregious than the type of `plain' errors that might suffice to excuse a procedural default in a criminal trial." Id. In this case, the court instructed the jury that in order for a work to be a joint work, each author's contribution to the copyrighted work had to be "substantial," making it clear that the authors' contributions had to be more than de minimus. As we said in Childress, "[t]he insistence on copyrightable contributions by all putative joint authors might serve to prevent some spurious claims by those who might otherwise try to share the fruits of the efforts of a sole author[.]" 945 F.2d at 507. The court's instruction thus touched on the purpose behind the copyrightability requirement.
 
 
 79
 Moreover, "[a] jury verdict will be reversed only when an appellant can show that the instructions considered as a whole prejudiced [it]." Holzapfel v. Town of Newburgh, 145 F.3d 516, 521 (2d Cir.1998) (citing Anderson v. Branen, 17 F.3d 552, 556 (2d Cir.1994)). In this case, the jury did not specifically answer the questions on the verdict form regarding any affirmative defense, including joint ownership. Thus, Medforms has not established that it was prejudiced by the alleged errors in the jury instructions. Likewise, even if we were to conclude that the court's instruction was incorrect, the evidence in this case supports the jury's verdict on a number of grounds. Therefore, analyzing the joint ownership instruction under the stringent fundamental error standard, we find that vacating the original jury verdict is not "necessary to correct a fundamental error or to prevent a miscarriage of justice." Shade, 251 F.3d at 313 (internal quotation marks omitted).
 
 II. Defendants' Appeal
 
 80
 The defendants cross-appeal from three decisions: 1) the district court's ruling finding that Modlin was an independent contractor and thus granting partial summary judgment for Medforms; 2) the district court's order dismissing the counterclaim; and 3) the district court's judgment denying the defendants' motion for attorneys' fees and costs. We address each in turn.
 
 A. Summary Judgment
 
 81
 The defendants argue that the trial court erred in granting summary judgment in favor of Medforms with regard to the "work made for hire" defense to the infringement claim. In light of our ruling affirming the jury's verdict in favor of the defendants, we do not address this claim. Even without the defendants' affirmative defense of "work made for hire," the jury found no infringement. Therefore, the issue of whether Modlin was a Medforms employee at the time he worked on FormFree is moot with regard to the infringement claims.
 
 B. Counterclaim
 
 82
 The defendants argue that the district court's dismissal of Medvar's counterclaim for abandonment should be reversed because it was improvident and inconsistent with the jury's verdict. In order to address this argument, some specific procedural history is necessary.
 
 
 83
 In the defendants' answer to the amended complaint, Medvar asserted a counterclaim against Medforms seeking a declaratory judgment that Medforms's copyright registrations were null and void and that Medvar was the owner of all title and right to the software. The final judgment issued by the district court dismissed Medforms's complaint against the defendants in light of the jury's verdict but did not address Medvar's counterclaim. On or about April 18, 2000, Medforms appealed the district court's judgment. On or about October 30, 2000, the parties stipulated to a withdrawal on the basis that the appeal was premature because Medvar's counterclaim had not been adjudicated.
 
 
 84
 On December 11, 2000, approximately one month after the appeal was withdrawn, the district court held a pre-trial conference and issued a scheduling order. The court also sought letter briefs on the issue of whether Medvar's counterclaim should be held before a jury. On January 3, 2001, Medvar timely submitted a letter brief opposing a jury trial. In March 2001, Medforms submitted several documents to the court, including a motion for partial summary judgment, that were stricken from the record for procedural defects on March 23, 2001.
 
 
 85
 On May 11, 2001, the district court held a second pre-trial conference and sua sponte dismissed Medvar's counterclaim. The court found the counterclaim had been abandoned because the defendants failed to object to its exclusion from the jury instructions and special verdict form and failed to seek any post-trial ruling on the counterclaim. In support of its ruling, the court cited Rules 49 and 51 of the Federal Rules of Civil Procedure and several abandonment cases.
 
 
 86
 The rationale behind the district court's dismissal of the counterclaim is not clear to us. We agree that failure to object to the exclusion of the counterclaim from the jury charge and special verdict form evidences abandonment. See Broadway Delivery Corp. v. United Parcel Serv. of Am., Inc., 651 F.2d 122, 126 (2d Cir.1981). However, the two pre-trial conferences and scheduling order suggest the court believed the claim was trial-ready. Medvar complied with the court's request for briefing at the first pre-trial conference, and seemed to otherwise be in compliance with the court's orders. Aside from documents stricken from the record, no motion was made seeking dismissal of the counterclaim. It is thus not evident to us what prompted the district court's action. Nor is it evident that Medvar was given an opportunity to argue that it had not abandoned its claim.
 
 
 87
 We are further confused by the court's reliance on Fed.R.Civ.P. 49 as support for finding the counterclaim abandoned. Rule 49 provides, in pertinent part:
 
 
 88
 If in [providing instruction to the jury] the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.
 
 
 89
 Fed.R.Civ.P. 49(a). The rule does not raise the question of whether the defendants' failure to object to the jury instructions is a basis for abandonment but, rather, whether the failure to object is a waiver of the right to a jury trial.
 
 
 90
 Rule 49 thus provides an obvious explanation for the district court's request for briefing at the initial pre-trial conference. It does not, however, explain why the court then found the claim abandoned. Because the rule permits the court to make a finding as to an issue omitted from the jury instructions, the court may have referenced Rule 49 to indicate that it was making such a finding. However, the rule also provides that if the court does not make a specific finding, it shall be deemed to have made a finding consistent with the special verdict. The dismissal of the counterclaim is not consistent with the special verdict finding no infringement by the defendants. Therefore, if the court was not making a specific finding with regard to the counterclaim, its dismissal would seemingly be in error. Without an explanation for its reference to Fed.R.Civ.P. 49, we are unable to determine, and therefore to review, the rationale behind the court's order.
 
 
 91
 Because the district court did not specify the basis for its ruling, we cannot accurately address the abandonment issue on appeal. We therefore remand this issue to the district court for clarification. Specifically, we ask the district court to specify the basis on which it issued its sua sponte order finding abandonment after two pre-trial conferences and Medvar's seeming compliance with the court's requests regarding the counterclaim.
 
 C. Attorneys' Fees
 
 92
 The defendants argue that the trial court abused its discretion in denying their motion for attorneys' fees and costs. "The standard of review of an award of attorney's fees is highly deferential to the district court." Matthew Bender & Co., Inc. v. West Publ'g Co., 240 F.3d 116, 121 (2d Cir.2001) (internal quotation marks omitted). Attorneys' fees are available to prevailing parties under § 505 of the Copyright Act but are not automatic. Fogerty v. Fantasy, Inc., 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). While "`[t]here is no precise rule or formula for making these determinations,'... equitable discretion should be exercised." Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).
 
 
 93
 In this case, the district court, relying on factors outlined by the Supreme Court in Fogerty, found that Medforms's claims were not frivolous or objectively unreasonable, and found that there were close questions of fact and law weighing against an award to the defendants. The defendants have not made any showing that the court's findings and conclusions were an abuse of discretion. We therefore affirm the district court's denial of the defendants' motion for attorneys' fees and costs.
 
 CONCLUSION
 
 94
 For the foregoing reasons, we affirm the judgments of the district court denying Medforms's motion for a new trial, denying Medforms's motion for judgment as a matter of law, dismissing Medforms's complaint after the jury trial, and denying the defendants' motion for attorneys' fees and costs. We decline to reach the district court judgment granting partial summary judgment to Medforms as moot.
 
 
 95
 We remand for clarification the district court's order dismissing Medvar's counter-claim for abandonment. This panel retains jurisdiction over any claims that arise from the district court's clarification of its ruling. See United States v. Jacobson, 15 F.3d 19, 21-22 (2d Cir.1994). Accordingly, the clerk is directed to issue the mandate noting our retention of jurisdiction, in compliance with a Jacobson order filed contemporaneously with this opinion.
 
 
 
 Notes:
 
 
 [1]
 We note that Medforms did not object to the district court's jury instruction on authorship or to the court's instruction on the defendants' ability to rebut the prima facie evidence created by the certificates
 
 
 [2]
 Medforms argues that it only sought to copyright the source codes, not the entire FormFree and Superbill Express programs. The subject of the copyrights was a central issue of fact at trial, on which the jury heard conflicting evidence and reached a conclusion that is not before us for review
 
 
 [3]
 Notably, Medforms did not object to the verdict form, which clearly stated that if the jury answered "No" to each question regarding infringement, it was finished and was not to answer the questions relating to the affirmative defenses. Medforms neither objected to the verdict form nor requested that the jury be instructed to determine ownership of the copyrights